In the Matter of the Application of MINNIE SHAPIRO, the Mother of ALBERT HAMMERMAN, to Obtain Certain Information Concerning Said Child from THE NEW YORK FOUNDLING HOSPITAL, Appellant.

MINNIE SHAPIRO, Respondent.

*New York Foundling Hospital — when not compelled to inform the mother as to the present residence of an illegitimate child which has been indentured by it.*

The delivery of an illegitimate child by the mother thereof to the New York Foundling Hospital carries with it a renunciation of the child, and a consent that the institution may exercise the power given to it by chapter 635 of the Laws of 1872 to indenture the child to other persons for such time or period as it may deem proper.

*Semble,* that section 3 of chapter 438 of the Laws of 1884, as amended by chapter 54 of the Laws of 1894, which requires institutions for the reception of minors to keep a record containing various particulars about the child, and which authorizes the Supreme Court, upon the application of a parent, relative or legal guardian of such child, to direct the officers of the institution to furnish the applicant with such extracts from the record relating to the child as the court may deem proper, does not apply to an institution such as the New York Foundling Hospital organized solely for the care and custody of foundlings or illegitimate children, where the mother of the child has surrendered it to the institution.

Assuming, however, that this statutory provision does apply to the New York Foundling Hospital with respect to an illegitimate child surrendered to the institution by its mother, the court is not justified in requiring the institution, upon the application of the mother of the child, to furnish the latter with a copy of the record relating to the child, where it appears that the institution, previous to the application, has exercised its statutory power to indenture the child and that the copy of the record sought to be obtained will consequently serve no good purpose, but can only be used to annoy or interfere with the child and those to whom it has been indentured.

McLAUGHLIN, J., dissented.

APPEAL by the New York Foundling Hospital from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of December, 1904, directing the appellant to furnish the respondent with certain extracts from its records in relation to her son, Albert Hammerman.

*Bayard L. Peck,* for the appellant.

*I. D. Morrison,* for the respondent.

INGRAHAM, J.:

Upon her affidavit the respondent obtained an order requiring the New York Foundling Hospital, appellant, to show cause why it should not furnish to the respondent an extract from its records relating to a child which had been confided by the respondent to the foundling hospital. From this affidavit it appears that the applicant had an illegitimate child in the month of April, 1898; that in the month of July, 1898, being unable to provide for the child, she took the same to the New York Foundling Hospital and delivered him into the custody of the mother superior; that in the year 1899 the applicant was married to her present husband, who subsequently started in business and has prospered; that the respondent then called upon the hospital for the purpose of ascertaining the whereabouts of her child so that she could obtain possession of him; that being unsuccessful in obtaining such information she obtained a writ of habeas corpus requiring the hospital to produce said child before a justice of the Supreme Court, but by the return to such writ it appeared that the child was no longer in the custody of the hospital, but was without the State and that for that reason the writ was dismissed. Whereupon this proceeding was commenced under section 3 of chapter 438 of the Laws of 1884, as amended by chapter 54 of the Laws of 1894. In opposition to this motion an affidavit was submitted from the treasurer of the New York Foundling Hospital, from which it appeared that on the 1st day of July, 1898, Albert Hammerman, an infant under two years of age, was surrendered to the New York Foundling Hospital by its mother and since said date the said child has been abandoned by its said mother and she has never contributed in any manner to its care or support; that on or about the 18th day of February, 1902, under the power conferred upon said hospital by chapter 635 of the Laws of 1872, the New York Foundling Hospital indentured said Albert Hammerman to Louis and Anna Martin, who reside, and have continuously since said 18th day of February, 1902, resided without the State of New York; that the said Louis and Anna Martin are financially able to support and educate the said child and desire to retain the said child and rear him as their own child. The court below granted the motion and an order was entered requiring the hospital to furnish the applicant with such extracts from the records

of the hospital as relate to the place of the sojourn of said child and the terms under which it was indentured, and from this order the hospital appeals.

It is not stated in the record under what statute the appellant was incorporated, but by chapter 635 of the Laws of 1872 the New York Foundling Hospital was authorized and empowered to receive and keep and take under its care, charge, custody and management, children of the age of two years or under born out of wedlock who, by the consent of the mother, may be intrusted to said corporation. Section 2 provides that children intrusted to said corporation by the voluntary act of their parents, guardians or nearest relatives shall be deemed to be in the lawful charge and custody of said corporation. Section 3 provides that in case at any time after such abandoned or deserted child shall have been intrusted to said corporation it should appear to the board of managers expedient or proper to discharge such child the said board of managers may, in their discretion, discharge such child and restore it to its parents, guardian or other protector on such reasonable terms and conditions as the said board might deem right and proper. Section 4 provides that said corporation shall have the power, when the children in their care shall respectively attain a proper age, " to bind out or indenture such children, when of suitable ages, as clerks, apprentices or servants, to some profession, trade or employment, for such time or period as they may deem proper;  *  *  *  provided, however, that in the case of children voluntarily entrusted to said corporation by their parents, guardians or nearest relatives, as hereinbefore provided, the said corporation shall not bind out or indenture any such child for a period beyond the time for which such children have been entrusted to said corporation." Subsequent sections of the statute prohibit an assignment or transfer of the indenture or contract of service and prohibit the person to whom the child shall have been bound from letting or hiring out for any period the services of such child without the consent in writing of the institution, and provision is made for cases in which the indenture may become void or be canceled or annulled. By section 8 the board of managers of the corporation are made the guardian of every child bound out or held for service under the provisions of the act and are

FIRST DEPARTMENT, APRIL, 1905. [Vol. 103.

charged with the duty of seeing that the terms of the contract are faithfully performed, and section 9 provides that a report shall be made to the corporation at least once in every six months during the term of service as to the conduct and behavior of the child.

It was the intention under this statute to give to this institution absolute control and authority over children committed to its care, quite distinct from the authority given to orphan asylums and other charitable institutions of that character. The duty of caring for illegitimate children and those abandoned by their parents or guardians which devolves upon the public was, by this statute, imposed upon this institution, and when the child had arrived at a proper age the corporation was authorized to indenture the child to those who were willing to care for it and support it until it should arrive at a specified age. The statute having authorized such an indenture of a child without any provision authorizing the parent or other guardian of the child to reclaim the custody of the child, it would seem to follow that when a child has been once committed to this institution and has been properly indentured to others who undertake to maintain and care for it, the indenture could not be canceled because the parent wishes to reclaim it. The children to be provided for by this institution and for which it is given the powers contained in this act are foundlings, deserted or illegitimate children who are left without parents to support or care for them where the duty to maintain them devolves upon the public. The abandonment or delivery of such a child to this institution carries with it under the powers conferred by this act a renunciation of the child and a consent that the institution may exercise the power given by the statute to indenture it to those who are willing to care for, protect and maintain it until it should arrive at the age specified in section 4 of the statute. The very object sought to be attained by this legislation would be defeated if the person surrendering or abandoning the child were at liberty at any time to cancel or annul the indenture and resume the custody of the child; for it is quite plain that no person would be willing to take a child under such an indenture and maintain and care for it if at any time the child could be taken out of his custody. The welfare of children of this class is a charge upon the public, and the public certainly has authority to determine what shall be done and what measures shall be taken to promote

their welfare. The object of this statute would be wholly frustrated if the parents or guardians who surrender the children could at any time reclaim them. These considerations are important when we come to examine the provisions of the act under which this application is made. It is section 3 of chapter 438 of the Laws of 1884, as amended by chapter 54 of the Laws of 1894. The act of 1884 is entitled " An act to revise and consolidate the statutes of the State relating to the custody and care of indigent and pauper children by orphan asylums and other charitable institutions." Section 14 repeals certain other acts relating to this general subject, but none apply directly to foundling asylums or to this institution. The act of 1872, under which this appellant acts, is not referred to. Section 1 of the act of 1884 provides for committing orphan and destitute children to orphan asylums or other institutions incorporated for that purpose. Section 3, as amended by chapter 54 of the Laws of 1894, provides that "all institutions, public or private, incorporated or not incorporated, for the reception of minors, whether as orphan or as pauper, indigent, destitute, vagrant, disorderly or delinquent persons, are hereby required to provide and keep a record, in which shall be entered " various particulars about the child, and that the Supreme Court may, upon application by a parent, relative or legal guardian of such child, after due notice to the institution and a hearing had thereon, by order direct the officers of such institution to furnish such parent, relative or legal guardian with such extracts from such record relating to such child as such court may deem proper. Section 5 provides that any corporation specified in the 1st section of the act may bind out any indigent or pauper child, and the other provisions of the act regulate the adoption or binding out of the child and the conditions upon which the agreement of adoption may be canceled ; and section 11 provides that the parents of any child " which shall have been adopted or bound out in pursuance of this act shall, from the time of such adoption or binding out, as the case may be, be relieved from all parental duties toward, and of all responsibility for, the child so bound out or adopted, and shall thereafter have no rights over, or to the custody, services or earnings of such child."

I am inclined to think that the provisions of section 3 of this act (as amd. *supra*) would not apply to an institution organized solely

for the care and custody of foundlings, or illegitimate children, where the mother of such child has surrendered it to the institution, thus giving up all right and authority over it. But, assuming that this provision would apply to this institution, I do not think that, under the circumstances here disclosed, the court was justified in requiring the institution to give to the applicant a copy of its record relating to this child. After providing that a certain record shall be kept by the institution, the court is authorized to require the institution to furnish to the parent "such extracts from such record relating to such child as such court may deem proper." But such extracts should not be furnished where they can serve no good purpose, and where the only object will be to annoy or interfere with the child and those to whom its custody has been awarded. The avowed object of this application is to enable the applicant to resume the care and custody of the child, but that is just what the applicant cannot do. The institution was authorized to bind this child out until it arrived at the age of twenty-one years. Acting under this power it has made such a disposition of the child, and the persons who have taken the child maintained and cared for it for years, are entitled to continue to have the custody of the child under the agreement made under the authority conferred by statute. As the avowed object, to accomplish which this application is made, cannot be accomplished, no possible benefit to the child or to the applicant can result from allowing the applicant to know the child's whereabouts.

If the child was still in the custody of the institution, and a proper case was made which would justify the applicant resuming the care and maintenance of the child, it may be that a good reason would be presented for allowing the applicant a copy of the records so that the child would be identified, but that condition no longer exists. Whether or not the application should be granted and a copy of the records furnished to the applicant is vested by the statute in the discretion of the court, and that discretion should not be exercised unless it can be seen that some good purpose would be subserved thereby. From the facts submitted to the court it seems to me that no good can come either to the parent or to the child by obtaining this particular information, but the result would be that the person who is entitled to the care and custody of the child until it arrives at the age of twenty-one years would be annoyed and harassed by an

application of the applicant in relation to the child, and the welfare of the child itself would certainly not be promoted by the constant attempts to obtain its custody where such attempts must fail.

I think, therefore, that the court, assuming it had the power to grant this application — a question which it is not now necessary for us to determine — improperly exercised this discretion in granting an application which cannot be of advantage either to the child or to the applicant.

It follows that the order appealed from must be reversed and the proceeding dismissed.

VAN BRUNT, P. J., and HATCH, J., concurred; McLAUGHLIN, J., dissented.

McLAUGHLIN, J. (dissenting):

I am unable to concur in the opinion of Mr. Justice INGRAHAM. There is nothing in the record to show under what statute the appellant is incorporated and, therefore, it must be assumed, from the facts there appearing, that chapter 54 of the Laws of 1894 (amdg. Laws of 1884, chap. 438, § 3) applies. This statute provides : " All institutions, public or private, incorporated or not incorporated, for the reception of minors, whether as orphan or as pauper, indigent, destitute, vagrant, disorderly or delinquent persons, are hereby required to provide and keep a record * * *. The Supreme Court may upon application by a parent * * * of such child, after due notice to the institution and hearing had thereon, by order direct the officers of such institution to furnish such parent * * * with such extracts from such record relating to such child as such court may deem proper."

The order here appealed from was made upon notice to the appellant and simply directs that it shall furnish to the petitioner extracts from its records, so far as the same relate to the place of sojourn of her child and the terms under which it was indentured.

I do not think it can be said that the court at Special Term abused its discretion in granting the application. A very good reason is suggested why the application should be granted. The petitioner and her husband are now able to properly maintain and support the child and the health of the petitioner has been seriously affected by being deprived of him. There is nothing to show, when

she left the child with the appellant, that she ·intended to be for-ever deprived of its society, or that knowledge of its whereabouts should thereafter be kept from her. Whether or not the welfare of the child will be best subserved by leaving him where he is, is a question not now before the court. The question here is simply whether the court abused its discretion in requiring the appellant, under the statute referred ·to, to tell the mother where the child is and the conditions under which it is held.

Order reversed and proceeding dismissed.